# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR KENT COUNTY

HENRY GREENFIELD,        )
                               )

      Plaintiff,             )
                               )

         v.              )
                               )      Case No. CPU5-17-001915

DANIEL FOLEY,         )
                               )

      Defendant.       )

Reserved: January 10, 2020
Decided: February 10, 2020

Gregory A. Morris, Esq.
46 The Green
Dover, DE 19901
*Attorney for Plaintiff*

David J. Bever, Esq.
2 West Lockerman Street
Dover, DE 19801
*Attorney for Defendant*

## DECISION AFTER TRIAL

**SURLES, J.**

On December 8, 2017, Henry Greenfield ("Plaintiff") filed a breach of contract action against Daniel Foley ("Defendant") for damages resulting from Defendant's failure to make payments and repay a loan of $16,500.00. Plaintiff alleges that Defendant is liable for breach of contract and seeks the full amount of the loan plus pre and post-judgment interest, costs and attorney's fees.

Trial was held on January 10, 2020. The Court heard testimony from four witnesses[1] and received evidence from both parties.[2] At the conclusion of the trial, the Court reserved decision. This is the Court's final decision after trial.

### FACTS

At trial, the rendering of events conflicted between the parties and at times, within a given party's own account. Based on the testimony and evidence presented at trial, the Court finds the following facts:

This matter involves a cash loan of $16,500.00 given to Defendant by Plaintiff. Plaintiff and Defendant met in 2004, through their mutual love for dogs and the outdoors, at a park near Plaintiff's home. Shortly after meeting, Plaintiff hired Defendant to be his "guy-Friday."[3] Defendant was hired to perform tasks around Plaintiff's house, including yard work, painting and clerical duties. Defendant was paid in cash each week.

Throughout Defendant's employment, Plaintiff loaned Defendant money for various needs. Plaintiff loaned Defendant money for four or five car loans, car repairs, a refrigerator and a heating and air conditioning system. All but one of the agreements between Plaintiff and Defendant

---

[1] On Plaintiff's side, Henry Greenfield, Levi Fisher and Carolyn Kurtz. On Defendant's side Daniel Foley.
[2] Specifically, the Court received Plaintiff's Exhibits 1 and 2 and Defendant's Exhibits 1 and 2.
[3] *Guy-Friday*, Dictionary.com, https://www.dictionary.com/browse/guy-friday?s=t (last visited Jan. 24, 2020) (a man who acts as a general assistant in a business office or to an executive and has a wide variety of especially secretarial and clerical duties). The Court acknowledges that although Plaintiff uses that term guy-Friday, Defendant's position was strictly at Plaintiff's home not Plaintiff's place of business.

1

were done without a written contract. [4] Plaintiff only mentioned one contract with Defendant that was in writing. This contract was for a car loan and was very early in Defendant's employment for Plaintiff. Plaintiff explained that Defendant never had any issue paying off the money Plaintiff loaned to him.

In April of 2011, Plaintiff assisted Defendant in purchasing a 1998 Mercedes-Benz SLK230 ("Black Mercedes").[5] Plaintiff placed a lien on the Black Mercedes and Plaintiff withheld $50.00 from Defendant's weekly check as repayment for the loan. [6] The loan for the Black Mercedes was also done without a written contract.[7]

The loan at issue at trial occurred in early December 2014, when Plaintiff loaned Defendant $16,500.00 in cash. Plaintiff secured his interest by adding the new amount to the currently existing lien. At the time Plaintiff gave Defendant $16,500.00, the Black Mercedes still had Plaintiff's pre-existing lien. As in the majority of past dealings between the parties, the $16,500.00 Plaintiff loaned to Defendant was also done without a written contract.

In mid-December of 2014, after loaning Defendant the $16,500.00, Plaintiff noticed approximately $7,000.00 in cash and jewelry missing from his home.[8] Believing Defendant had taken the money, he decided to confront him. On December 18, 2014, Plaintiff and Defendant met at WSFS bank where Defendant usually received his weekly pay. Plaintiff confronted Defendant about the missing money and accused Defendant of stealing from him. Plaintiff fired Defendant

---

[4] Plaintiff testified that the loans made to Defendant would vary from $4,000.00 to $13,000.00.

[5] Defendant's Exhibit No. 1.

[6] According to the Court's math, at $200.00 per month it would take Defendant five and one half years to pay off the loan on the Black Mercedes making the final payment due around November of 2016. According to Defendant's Exhibit No. 1, the Black Mercedes was purchased for $12,990.00.

[7] To be clear, Plaintiff does not seek to recover any outstanding balance due on the loan to Defendant for purchase of the Black Mercedes.

[8] Plaintiff does not seek to recover for the $7,000.00 in cash and jewelry.

2

from his guy-Friday position.[9] After this point, Defendant made no payments on the previous loan or the $16,500.00 loan.

After Plaintiff fired Defendant, Defendant continued to work for Plaintiff's neighbor and drive the Black Mercedes.[10] Soon after Plaintiff noticed Defendant was no longer driving the Black Mercedes, but instead was driving a newer red Mercedes convertible ("Red Mercedes").

Plaintiff confronted Defendant, inquiring about the status of the Black Mercedes that Plaintiff retained a lien on. Defendant told Plaintiff that the Black Mercedes was at the shop being worked on by Jimmy because the compressor had died. Following the parties conversation, Plaintiff spoke with Jimmy about the Black Mercedes and discovered that the Black Mercedes had been sold.

In July, Plaintiff drove to the Department of Motor Vehicle (DMV) to follow up on the information that he received from Jimmy at the auto shop. Plaintiff found out from DMV that the car had in fact been sold, the title transferred and his lien released. Plaintiff had not released the lien, because neither the lien on the Black Mercedes nor the new loan had been satisfied.[11] Plaintiff acquired a copy of the lien release from DMV that bore his alleged signature. Plaintiff had not signed the release. Plaintiff's expert witness at trial determined that the release document did not bear Plaintiff's signature. The Court finds that Defendant forged Plaintiff's signature on the Black Mercedes lien release.[12]

---

[9] Defendant testified that he did not take money from Plaintiff. Defendant also testified that he was not fired, but instead quit his one day per week guy-Friday position so that Defendant could tend to his wife's health needs.

[10] Plaintiff testified that this was a working relationship that developed for Defendant during the time Defendant was working for Plaintiff.

[11] Defendant testified that the lien had been paid at this time. The Court does not find Defendant's testimony credible as the parties' payment schedule indicated the prior lien would be paid off in 2016. Moreover, based on the terms of repayment, Defendant's final payment would not come due until November 2016. *See supra* n. 6.

[12] Defendant offered testimony to the contrary, specifically that Plaintiff's business associate had provided him with the executed lien release. The Court finds Defendant's testimony completely incredible.

In July of 2015, having realized the signature on the Black Mercedes lien was not his own, Plaintiff confronted Defendant and demanded $10,000.00 in settlement. Defendant did not deny Plaintiff's allegations, and affirmed that he had sold the Black Mercedes. However, despite having sold the Black Mercedes for $6,500.00, Defendant claimed that he could not repay Plaintiff so quickly and asked whether Plaintiff was going to contact the police.

Later in July of 2015, Plaintiff and Defendant met at Plaintiff's home. Plaintiff again confronted Defendant about the missing money. Defendant, after inquiring whether Plaintiff was recording their conversation, admitted to stealing the $7,000.00 in cash and various jewelry from Plaintiff's home. Defendant has yet to repay Plaintiff for any of the loaned $16,500.00 and is no longer in possession the Black Mercedes.

## LEGAL STANDARD

As trier of fact, the Court is to assess the credibility of the witnesses and, where there is a conflict in the testimony, to reconcile these conflicts, "if reasonably possible[,] so as to make one harmonious story."[13] In doing so, the Court takes into consideration the demeanor of the witnesses, their apparent fairness in giving their testimony, their opportunities in hearing and knowing the facts about which they testified, and any bias or interest they may have concerning the nature of the case.[14] In civil cases, "a plaintiff has the burden of proving the elements of their case by a preponderance of the evidence.[15] Proof by a preponderance of the evidence means proof that something is more likely than not."[16] Therefore, "the side on which the greater weight of the evidence is found is the side on which the preponderance of the evidence exists."[17]

---

[13] *Nat'l Grange Mut. Ins. Co. v. Nelson F. Davis, Jr., et. al.*, 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000).
[14] *See State v. Westfall*, 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).
[15] *Narayan v. Sutherland Global Holdings Inc.*, 2016 WL 3682617, at *8 (Del. Ch. Jul. 5, 2016) (internal citations omitted).
[16] *Id.*
[17] *Trumbo v. LST Investments*, 2015 WL 8200712, at *3 (Del. Com. Pl. Dec. 7, 2015) (internal citations omitted).

## DISCUSSION

The Court finds that an enforceable contract was formed between the parties and that parties' contract was breached when Defendant failed to repay the loaned money and subsequently had Plaintiff's lien lifted on the Black Mercedes. The Court finds Plaintiff credible and does not find Defendant credible. Further, the Court finds Defendant waived his Statute of limitations defense[18] and that the Statute of Frauds is not applicable in this case.

## I.      Breach of Contract

To succeed on a breach of contract claim, Plaintiff must show: "(1) a contractual obligation; (2) a breach of the obligation imposed by the contract; and (3) resulting damages."[19] Because the existence of a contractual obligation is an element to a breach of contract action, the Court must first analyze whether a contract was established between the two parties.

Matters concerning the formation of a contract are questions of fact.[20] A valid contract exists if: "(1) the parties intended that the contract would bind them; (2) the terms of the contract are sufficiently definite; and (3) the parties exchange legal consideration."[21] Unless the Statute of Frauds apply, "an oral agreement is perfectly enforceable so long as these elements are proven by a preponderance of the evidence."[22]

In determining whether the parties intended to be bound by an oral agreement, the Court should look to "objective manifestations of assent" and the "surrounding circumstances" that evidences the parties' intentions.[23] Therefore, overt manifestations and not a party's subjective

---

[18] CCP Civ. R. 8.
[19] SARN Energy LLC v. Tatra Def. Vehicle a.s., 2018 WL 5733385, at *3 (Del. Super.).
[20] *Sheets v. Quality Assured, Inc.*, 2014 WL 4941983, at *2 (Del. Super.).
[21] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).
[22] Sheets, 2014 WL 4941983, at *2.
[23] *Stone Creek Custom Kitchens & Design* v. *Vincent*, 2016 WL 7048784, at *3 (Del. Super.).

5

intent determines whether a contract has been formed.[24] When Plaintiff loaned Defendant the $16,500.00 in cash, Plaintiff secured his interest with a lien on Defendant's Black Mercedes.[25] The loan in question was not the first time Plaintiff loaned Defendant money. From the start of Defendant's employment, Plaintiff loaned money to Defendant. In exchange for loaned money, Defendant would pay back the loan and at times Plaintiff would place a lien on Defendant's vehicle to secure Plaintiff's interest.[26] The Court finds that the parties past dealings—especially the existence of the still-outstanding loan and consequential lien for the purchase of the Black Mercedes—support a conclusion that there existed an expectation by the parties that the lien placed on the Black Mercedes would not be lifted until payment on the new loan was made in full.

Next, Defendant argues that such terms are not sufficiently definite to form a contract. The Court will deny the existence of a contract only if the terms "are so vague that a Court cannot determine the existence of a breach."[27] In addition, "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."[28] When construing the meaning of an oral contract, a Court must look to surrounding circumstances and the parties' course of dealing in order to ascertain their intent.[29] In this situation, the parties have entered into similar contracts in the past. Contracts where Plaintiff loaned Defendant money with the expectation that Defendant would repay Plaintiff for the loan. At times, Plaintiff would secure his interest by placing a lien on Defendant's property. In addition,

---

[24] Sheets, 2014 WL 4941983, at *2; Ripsom v. Beaver Blacktop, Inc., 1988 WL 32071, at *10 (Del. Super.), aff'd, 567 A.2d 418 (Del. 1989) ("the law is concerned with the external manifestations of the parties rather than their undisclosed mental state, and it is enough that one party manifests an intention to induce the other's response and to be induced by it, and that the other responds in accordance with the inducement.").

[25] Plaintiff already had a pre-existing lien on Defendant's Black Mercedes.

[26] Plaintiff testified that in the past he had placed a lien on Defendant's vehicle.

[27] Bryant v. Way, 2011 WL 2163606, at 4 (Del. Super.); Cont'l Ins. Co. v. Rutledge & Co., Inc., 750 A.2d 1219, 1230 (Del. Ch. 2004).

[28] Osborn ex rel., 991 A.2d at 1159 (Del. 2010)

[29] Sheets, 2014 WL 4941983, at *2.

Plaintiff and Defendant normally did not use a written agreement. Because of the parties' ongoing relationship when Plaintiff loaned Defendant the money and the circumstances surrounding the loan, the Court finds that Defendant was to repay the loan with in a reasonable time and that the lien on the Black Mercedes would not be lifted until the $16,500.00 loan was paid in full.

Further, even if the parties did not reach an agreement as to the time of repayment, and the Court was not able to determine time for repayment, it would not be fatal to Plaintiff's claim. Specifying the time for payment is not material to contract formation.[30] As the Delaware Superior Court has stated:

> "Without an express term providing for the timing of payment, it falls to the Court to supply an appropriate term. When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court . . . . If no time for performance is fixed, the court will imply a reasonable time . . . ."[31]

In the absence of a repayment term, the Court finds based upon the testimony that repayment of the $16,500.00 was to be made within a reasonable time. In this instance, Plaintiff intended to keep the lien on the Black Mercedes until the loan was repaid in full. In this case, the loan could have conceivably been paid off in one year.

Lastly, the Court finds that the parties exchanged legal consideration. Consideration for a contract must be "bargained for" between the parties and can be either a "benefit to the promisor or a detriment to the promisee."[32] The Court limits its inquiry into consideration to its existence and not whether it was fair, adequate or sufficient.[33] In this case, Plaintiff loaned Defendant $16,500.00 in cash in exchange for Plaintiff placing a lien on Defendant's Black Mercedes and a

---

[30] Stone Creek, 2016 WL 7048784, at *4.
[31] *Id.* at *4 (finding that repayment should be made in a reasonable time) (internal quotations omitted).
[32] *Bryant,* 2011 WL 2163606, at *5.
[33] *Osborn ex rel.,* 991 A.2d at 1159.

return promise that he would repay the loaned money. The Court finds that this is sufficient consideration to establish the formation of a contract between the parties.

In sum, the testimony and exhibits prove that a valid contract existed between Plaintiff and Defendant. Plaintiff handing Defendant $16,500.00 in cash and placing a lien on Defendant's Black Mercedes in expectation of repayment constitutes an overt manifestation of assent. The terms of the contract, when viewed objectively in light of the surrounding circumstances are sufficiently definite. The parties' exchange constitutes legal consideration.

### A. Breach

A breach of contract occurs by a party's non-performance, repudiation, or both.[34] Further, a contract is also breached when a party "fails to make payment by the date required under the agreement between the parties.[35] A breach occurs when a party abandons their duties under the contract or fails to complete the contract in a reasonable time. [36] As discussed above, because there was no exact repayment date for the loan, Defendant was supposed to make repayment on the loan within a reasonable time. Over six years has elapsed since Plaintiff originally loaned Defendant $16,500.00 in cash and Plaintiff no longer has a lien placed on Defendant's Black Mercedes. The Court concludes that Defendant has failed to make repayment to Plaintiff in a reasonable time.

### B. Damages.

"A party harmed by a breach of contract is entitled to compensation that will place that party in the same position that the party would have been in if the other party had performed under the contract."[37] Had Defendant repaid the money, Plaintiff would have received the $16,500.00. Because of Defendant's refusal to pay, Plaintiff is now without the $16,500.00 that he loaned

---

[34] *Preferred Fin. Servs., Inc. v. Bus. Builders for Entrepreneurs, LLC*, 2016 WL 4537759, at *3 (Del. Com. Pl.).
[35] *Id.* at *3.
[36] *Lee-Scott v. Shute*, 2017 WL 1201158, at* 6 (Del. Com. Pl.).
[37] *Optical Air Data Sys., LLC v. L-3 Commc'ns Corp.*, 2019 WL 328429, at *4 (Del. Super.).

8

Defendant. Plaintiff is also without the lien interest that was placed on the Black Mercedes. The Court concludes that Defendant's breach damaged Plaintiff.

## II. Defendant's Affirmative Defenses

### A. Statute of Limitations

Under 10 Del. C. §8106, there is a three year statute of limitations for claims arising out of an alleged breach of contract.[38] The statute begins to run when the contract has been breached.[39] For a loan agreement that fails to set a payment date, the "statute of limitations begins to run a reasonable time after the loan is made."[40] "This general rule is consistent with the principle in contract law that "where no time for performance is fixed, the Court will imply a reasonable time for performance.""[41]

Plaintiff argues that because Defendant failed to raise the Statute of Limitations defense prior to trial, Defendant's affirmative defense is deemed waived. The Statute of Limitations is an affirmative defense which must be raised in the responsive pleading.[42] A party's "failure to timely assert an affirmative defense generally constitutes a waiver of the right to do so."[43] However, Courts have been lenient with litigants who fail to raise the defense in their initial answer by allowing parties to subsequently assert the defense at a later time. The Delaware Superior Court has held:

> "The purpose of requiring the defendant to plead a limitations defense in the answer "is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity" to rebut the defense . . . . That is, a limitations defense does not

---

[38] 10 *Del. C.* §8106.

[39] *Petroleum* v. *Magellan Terminals Holdings, L.P.*, 2015 WL 3885947, at 10 (Del. Super.).

[40] *Alonso* v. *Maldonado*, 2015 WL 7068206, at 2 (Del. Super.).

[41] *Id.*

[42] *Lee* v. *Linmere Homes, Inc.*, 2008 WL 4444552, at 2 (Del. Super.); *see also* CCP Civ. R. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . statute of limitations."); CCP Civ. R. 12(b) ("Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required.").

[43] *395 Assocs., LLC* v. *New Castle Cty.*, 2006 WL 2021623, at *9 (Del. Super.) ("The Court agrees that the statute of limitations as an affirmative defense can be waived.").

necessarily have to be raised in the answer. Rather, [c]onsistent with the purpose of Rule 8(c), courts require that defendants assert a limitations defense as early as reasonably possible. That does not imply that a limitations defense can be raised at any time but, instead, suggests that the defendant assert the defense in a timely manner so as to promote judicial economy and avoid surprise and undue prejudice to the plaintiff."[44]

Unlike the defendant in *Abdi*, Defendant in this case did not amend his answer to raise the Statute of Limitations defense, nor was it raised in the pre-trial scheduling order. Defendant only asserted this defense at trial during opening and closing statements. Raising the defense at this late time does not constitute raising it "as early as reasonably possible". Therefore, the Court finds that Defendant has waived his Statute of Limitations defense.

### B. Statute of Frauds

Lastly, Defendant argues that the statute of frauds prohibits Plaintiff from bringing a claim under the alleged oral contract. Delaware's Statute of Frauds prohibits enforcement of an oral agreement that is "not to be performed within the space of 1 year from the making thereof" unless the contract is reduced to writing and signed by the party against whom enforcement is sought.[45] The time begins to run from the date the contract is entered into and not from the time performance is to begin.[46] If there is any possibility that such contract can be performed within one year, then the Statute of Frauds is inapplicable and the agreement need not be in writing.[47] Further, under Civil Rule 8(c), the Statute of Frauds is an affirmative defense, which must be plead in the responsive pleadings or it is deemed waived.[48]

---

[44] *Abdi* v. *NVR, Inc.*, 2007 WL 2363675, at *2 (Del. Super.), aff'd, 945 A.2d 1167 (Del. 2008) (internal citations and quotations omitted) (highlighting that the Delaware Superior Court in adhering to the purpose of pleading and deciding a case on its merits, allowed Defendant to assert a Statute of Limitations defense reasoning that Defendant asserted the defense "as early as reasonably possible" and filed a timely Motion for Leave to Amend its Answer so as to not surprise or prejudice Plaintiff).

[45] 6 *Del. C.* §2714; *World Class Wholesale, LLC* v. *Star Indus., Inc.* 2018 WL 2331991, at 1 (Del. Super.).

[46] *Aurigemma* v. *New Castle Care LLC*, 2006 WL 2441978, at 2 (Del. Super.).

[47] *World Class*, 2018 WL 2331991, at *1 (Del. Super.).

[48] CCP Civ. R. 8(c). Defendant did not raise this affirmative defense until trial. The affirmative defense was not in Defendant's Answer.

Defendant contends that the Statute of Frauds bars recovery, because it would have been impossible for Defendant to pay back the $16,500.00 within 1 year of forming the contract. The Court looks to the reasonable expectations of the parties *at the time of the formation of the contract.*[49] In other words, if the parties reasonably expected that the contract would be completed within 1 year in accordance with their terms, then the Statute of Frauds is inapplicable. From the perspective of the parties at the time of contract formation, the Court concludes that it would have been reasonable for the parties to think that Defendant could have repaid the $16,500.00 back within 1 year of the contract being formed.

## CONCLUSION

The Court finds that the parties' actions constituted a binding agreement for payment of $16,500.00 to be made in a reasonable time and that the lien on the Black Mercedes would not be lifted until payment on the loan was made in full. Further, the Court finds that Plaintiff has proven by the preponderance of the evidence that a $16,500.00 loan was made to Defendant and that Defendant is in breach of the parties' contract for failure to repay the loan within a reasonable time. It is hereby ordered Defendant pay Plaintiff $16,500.00 plus cost, pre and post-judgment interest assessed at the legal rate until paid. This Court reserves final decision on awarding attorney's fees until after post-judgment briefing in filed by Plaintiff.

**IT IS SO ORDERED.**

The Honorable Robert Surles
Judge

---

[49] *Haveg Corp.* v. *Guyer*, 211 A.2d 910, 912 (1965) ("the statute [of frauds] does not extend to an agreement which may by any possibility be performed within a year, in accordance with the understanding and intention of the parties at the time when the agreement was entered into").